**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DERRION CUNNINGHAM,

        Petitioner,                    Case No. 2:16-cv-10859
                                                 HON. DENISE PAGE HOOD

v.

CATHERINE S. BAUMAN,

        Respondent.
_____/

**<u>OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS AND DENYING
CERTIFICATE OF APPEALABILITY</u>**

      Petitioner, Derrion Cunningham, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is incarcerated at the Alger Maximum Correctional Facility in Munising, Michigan. He challenges his convictions for assault with a dangerous weapon, two counts of possession of a firearm by a felon, two counts of possession of a firearm during the commission of a felony, and carrying a concealed weapon, claiming that he received ineffective assistance of counsel. Respondent, through the Attorney General's Office, has filed an answer in opposition to the petition, arguing that Petitioner's ineffective assistance of counsel claim is meritless. For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.

I.  **BACKGROUND**

Petitioner's convictions arise from an April 28, 2018 attempted armed robbery involving Petitioner's neighbor, Kurby Nelson.

Mr. Nelson testified at trial that he knew Petitioner as "DJ," who had lived three houses away from him for about a year and half. According to Mr. Nelson, in the early morning on April 28, 2012 while loading up his car before work, he was approached by a man wearing a navy blue bandana on the lower half of his face. He testified that the man pointed a dark handgun at him and ordered him to get in the car. Mr. Nelson refused, and he and the man began to struggle. During the struggle, the bandana was pushed up and Mr. Nelson recognized the assailant as DJ. After briefly thwarting the attacker, Mr. Nelson ran to his door and knocked loudly. DJ again ran up to him and managed to take his bag before Mr. Nelson's stepdaughter answered the door. Mr. Nelson revealed on cross-examination that his live-in girlfriend had recently had an affair with DJ.

Mr. Nelson called the police soon after the April 28, 2012 incident. Two officers arrived and walked with Mr. Nelson to DJ's house. They did not find the missing bag and no one answered the door.

Detroit police sergeant Robert Avery testified that he conducted surveillance on Petitioner's home. He noticed Petitioner, who matched the description of the man Mr. Nelson reported as the armed robber, walking out of his house and turning north. Sergeant Avery testified that Petitioner had a "bulge" in his pocket or waistband. He called for back-up, and when the additional officers arrived, Petitioner ran back toward his house. Detroit police officer Ryan Connor testified that when he came to the scene, Petitioner was running toward his house. When Petitioner failed to comply with Officer Connor's order to stop, Officer Connor chased him to the side door of the home, which led to a basement staircase. Officer Connor testified that he heard a "loud metallic thud" in the basement area. (ECF No. 8-3 at 27.) After detaining Petitioner, Officer Connor took the stairs to the basement and found a handgun near the staircase. Petitioner denies that the gun was his.

After a two-day bench trial in Wayne County Circuit Court, Petitioner was convicted of assault with a dangerous weapon, two counts of possession of a firearm by a felon, two counts of possession of a firearm during the commission of a felony ("felony-firearm"), third offense, and carrying a concealed weapon. He was acquitted on the armed robbery and unlawful intent to imprison charges. On

October 12, 2012, the trial court sentenced Petitioner to ten years for the felony-firearm offense and five years' probation for all other convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals, asserting that trial counsel was ineffective in two ways: 1) by failing to sufficiently investigate the case; and 2) by failing to call witnesses. The Court of Appeals affirmed the conviction. *People v. Cunningham*, No. 313427, 2014 WL 3746503 (Mich. Ct. App. July 29, 2014).

Thereafter, Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim raised in the Michigan Court of Appeals along with two additional claims: 1) Officer Conner improperly paused to drink water during cross examination to cover his lying; and 2) officers lied about having a warrant to search his house. The Michigan Supreme Court denied leave to appeal. *People v. Cunningham*, 497 Mich. 954 (2015). Petitioner then filed the instant petition for habeas relief, asserting that his trial counsel was ineffective.

## II. STANDARD

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of

[Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Put another way,

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.
>
> *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of

6

[Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. ANALYSIS

Petitioner argues that his trial attorney was ineffective for two reasons: 1) he failed to properly investigate the case because a proper investigation would have revealed a defense witness, Gradell Andrew Mosely, whose testimony would have contradicted that of the Detroit police officers; and 2) his mother, Margaret Louise Jackson, should have been called to testify. Respondent counters that the

7

Michigan Court of Appeals' holding that Petitioner was not denied the effective assistance of trial counsel was reasonable, and therefore cannot be disturbed.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the

*Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

### A. Mr. Mosely

Petitioner contends that a proper investigation by trial counsel would have led to his neighbor, Mr. Mosely, being called as a witness at the motion to suppress hearing or at trial. He asserts that Mr. Mosely was an eyewitness to his April 30, 2012 arrest and would have testified that Petitioner complied with Officer Connor's order to stop. The Court of Appeals determined that the argument did not offer any factual proof of counsel's failure to investigate. In fact, trial counsel "stated that he interviewed defendant and his family . . . but they failed to give him any information on Mosely until after the witness lists were required to be filed and after the evidentiary hearing." *Cunningham*, 2014 WL 3746503 at *2.

The Court of Appeals further concluded that the claim was meritless because Mr. Mosely's testimony would not have contradicted Officer Connor's testimony. According to Mr. Mosely's testimony at the hearing on Petitioner's motion for a new trial, he was home the day Petitioner was arrested, but only observed the police walk into the house and "really didn't see" Petitioner. (ECF No. 8-8 at 16.)

9

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence."); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

Decisions as to what evidence to present and whether to call certain witnesses, however, are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). The failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Here, Petitioner does not demonstrate that trial counsel's alleged failure to investigate and present Mr. Mosely as a witness deprived him of a substantial defense. Mr. Mosely's testimony at the post-conviction hearing reveals that his limited observations would have added very little, if anything, to Petitioner's

defense. His birds-eye view of the scene would not have contradicted the officers' testimony as to how the events unfolded inside Petitioner's home. At the hearing on the motion for a new trial, Mr. Mosely testified that he could not even seen how the officers entered the home, making his observations virtually useless to contradict the officers who were inside the home. Petitioner is not entitled to relief on this claim.

**B.   Ms. Jackson**

Likewise, Petitioner is not entitled to relief on his claim that counsel was ineffective for failing to call his mother, Ms. Jackson, to testify. Ms. Jackson also testified at the post-conviction hearing on Petitioner's motion for a new trial. She indicated that she has a dog, Mitzy, who barks whenever anyone (including someone she knows) comes to the door. According to Ms. Jackson, if Petitioner had exited the house in the early morning on April 28, 2012, committed the armed robbery, and returned to the house, Mitzy would have barked. She further testified that she had been asleep at the time of the alleged armed robbery.

The Court of Appeals held that Petitioner could not overcome the presumption of effective assistance because Ms. Jackson was asleep at the time of the attempted robbery and may not have heard the dog barking. There is nothing unreasonable in the Michigan Court of Appeals' decision. Nor was trial counsel's

11

decision not to call Ms. Jackson to testify unreasonable. Her testimony that Mitzy barks when people enter her home would have been of little value, considering she also testified that she was asleep during the relevant time period, from 4:00 A.M. to 5:00 A.M. on April 28, 2012. Moreover, the introduction of such testimony could have worked against Petitioner, if any of the prosecution witnesses had heard a dog barking immediately after the attempted robbery. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (the reviewing court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [counsel] may have had for proceeding as they did." (internal quotations omitted)). Finally, the court found Petitioner not guilty of the charges associated with the April 28, 2012 attempted robbery, indicating that Ms. Jackson's testimony would not have altered the outcome of the trial in any way. Counsel's failure to call Ms. Jackson as a witness did not deprive Petitioner of a substantial defense, and he is not entitled to relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

For the reasons stated above, the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED**.

**SO ORDERED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: May 31, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager